No. 47.—ROBERT COLLINS, plaintiff in error, *vs.* WILLIAM B. JOHNSON, defendant in error.

[1.] A person who is an Attorney at Law and engaged in the defence of a suit, gives to the plaintiff a notice to sue other parties. It is doubtful whether, in doing so, he acts as Attorney at Law, or Attorney in fact: *Held*, that he is not, by the Act of 1850, "to regulate the testimony of Attorneys at Law," incompetent to prove the giving of the notice.

[2.] A draft is payable to "A B Cash." and indorsed "A B Cash.": *Held*, that *prima facie*, the indorsement is the indorsement of the bank and not that of A B.

Assumpsit in Bibb Superior Court. Tried before Judge POWERS, November Term, 1854.

This was an action of assumpsit, brought by Johnson against Collins, on the following bill of exchange:

"$5000.            COLUMBUS, December 15th, 1841.

Ninety days after sight, pay to the order of John Peabody, Esqr. Cash. Five Thousand Dollars, value received—which place to account of                D. McDOUGALD.
To W. M. Clark, New York.

Pay Robert Collins, or order,

JOHN PEABODY, Cash.

Pay William B. Johnson or order,

ROBERT COLLINS.

Macon, Georgia January 1st, 1844.   Received on the within draft from Robert Collins, Thirty Eight Hundred and Seventy-seven $\frac{31}{100}$ Dollars.        WILLIAM B. JOHNSON & Co.

Per Joshua A. Sands.

Collins *vs.* Johnson.

Macon, November 26th 1849.   Received on within draft from Robert Collins, One Hundred and Sixty-eight $\frac{52}{100}$ Dollars.                           WILLIAM B. JOHNSON & Co.
                                    Per J. S. Obear.

The defendant pleaded the general issue and the Statute of Limitations; and specially, "that on the tenth day of July, 1851, the defendant, by William K. DeGraffenreid, gave plaintiff written notice to sue said *note* within the time prescribed by law, and that plaintiff has failed to proceed to collect the same; and that the said John Peabody was cashier of the Insurance Bank of Columbus, in this State, and the said bill of exchange was indorsed by him, as cashier of said Bank, and for the benefit and use of said Bank." On the trial, plaintiff offered in evidence the bill of exchange, together with the following protest and notarial certificate:

"STATE OF NEW YORK, UNITED STATES OF AMERICA.
On the twentieth day of April, in the year of our Lord, 1842, at the request of D. & A. Wesson, I, Alexander Robertson, Notary Public, duly admitted and sworn, in the City of New York, did present the original bill of exchange hereunto annexed to the paying Teller of the LaFayette Bank in this City, where the same is made payable, and demanded of him payment, which he refused, saying, "No Funds". Wherefore, I, the said Notary, at the request aforesaid, did protest, and by these presents do publicly and solemnly protest, as well against the drawer, acceptor and indorser of the said bill of exchange, as against all others whom it doth or may concern, for exchange, re-exchange and all costs, damages and interest already incurred, and hereafter to be incurred, for want of payment of the said bill of exchange. This done and protested in the City of New York, in the presence of John Doe and Richard Roe, witnesses.

                                A. R. ROGERS,
                                   Notary Public.
And I, the said notary public, do hereby certify, that on the

said 20th day of April, I did duly serve the drawer and indorsers of the said bill of exchange, with notices of the protest thereof, in due form of law, by putting the same in the New York City Post Office, directed to them, as follows: "D. McDougald, Columbus, Georgia;" "John Peabody, Esq. Cash. Columbus, Georgia; Robert Collins, Esq. Macon Georgia;" and a duplicate, "Robert Collins, Esq. Columbus, Georgia" being the reported places of residence, and the Post Offices respectively nearest them". Duly signed and sealed by

A. R. ROGERS,<br>Notary Public.

To the introduction of the bill of exchange, protest and notarial certificate, the defendant objected. The Court over-ruled the objection, and defendant excepted.

George S. Obear, sworn, testified, "that he was well acquainted with the hand-writing of Joshua A. Sands, and that the receipt on the bill of exchange, dated Jan. 1st, 1841, was in his hand-writing; that Sands was, at that time, clerk for the plaintiff, and now resides in another State; that witness put on the bill of exchange the credit of 26th November, 1849, by the direction of plaintiff, whose clerk he was, and in the presence of defendant, and told the defendant that it was the amount of his share of the proceeds of sale of stock on joint account of plaintiff and defendant, sold by plaintiff. Defendant took the bill of exchange and looked at it, but said nothing." The plaintiff closed.

Defendant then proposed to prove by William K. DeGraffenreid the service of notice on the plaintiff to sue on the bill of exchange within three months. Defendant objected, on the ground, that at the time of the giving the notice, witness was Counsel for defendant. The Court sustained the objection, and defendant excepted. Upon an agreement between the parties, DeGraffenreid was allowed to testify, and stated that he served the following notice upon the plaintiff on the day it bears date:

"MACON, July 10th, 1851.

*To Wm. B. Johnson:* You are hereby notified to commence suit on the above described bill of exchange, within the time prescribed by law, or I shall avail myself of the benefit of the Statute, in such cases made and provided.

ROBERT COLLINS,
Per Wm. K. DeGraffenreid, Att'y."

Richard P. Spencer, sworn by interrogatories, stated: "Was in the Insurance Bank frequently during the latter part of 1841, and saw John Peabody acting in the capacity of Cashier of said Bank, from the first of November, 1841, till the time of his death, in Sept. 1842.

Plaintiff offered, in rebuttal, to read the testimony of John Johnson, taken by interrogatories, as follows: "Witness is Ordinary for Muscogee County, State of Georgia—has examined the records of his office, and can find no evidence of any administration ever having been granted to any person, on the estate of John Peabody, deceased; was acquainted with one person by the name of John Peabody, who resided and died in Muscogee County; knew another by the name of John B. Peabody." To the introduction of which evidence, Counsel for defendant objected. The Court over-ruled the objection and defendant excepted.

Defendant's Counsel then addressed the Jury. Counsel for plaintiff commenced his argument to the Jury, when he discovered that he had failed to prove that Ann E. McDougald (referred to in a certificate of the Clerk of the Superior Court of Muscogee County, subsequently introduced and read to the Jury) was the administratrix of Daniel McDougald, and proposed to re-open the case to prove that fact. This the Court allowed, defendant objecting. B. Hill was then sworn, and testified, "that he was acquainted with Ann E. McDougald, and that she was the administratrix of Daniel McDougald, who was dead", to which defendant objected. The Court over-ruled the objection, and defendant excepted.

Counsel for defendant then re-argued the case to the Jury, and asked the Court to charge the Jury, that unless plaintiff had shown that he had commenced suit against Daniel McDougald on the bill of exchange, within three months after the notice to sue had been given to him by defendant, they must find for the defendant, when Counsel for plaintiff asked to re-open the case a second time. This the Court allowed, defendant objecting. Plaintiff then read in evidence a certificate from John R. Sturges, the Clerk of the Superior Court of Muscogee County, dated the 15th day of May, 1852, certifying, in substance, "that Johnson instituted a suit in said Court, against Ann E. McDougald, administratrix of Daniel McDougald, on the bill of exchange, on the 15th day of August, 1851". Also, a certficate of Edward Birdsong, Clerk of said Court, dated the 12th day of November, 1853, stating, in substance, that the declaration and other papers in said case, Johnson against Ann E. McDougald, administratrix of Daniel McDougald, are not to be found in his office". To all of which defendant objected. The Court over-ruled the objection, and defendant excepted.

Counsel for defendant requested the Court to charge the Jury—

1st. In matters of security, the Jury must be satisfied that Collins intended to make the last payment on the bill of exchange.

2d. If done by Johnson, without the concurrence and approbation of Collins, and with a full knowledge of his, Collins' rights, then the credit does not take the case out of the Statute.

3d. If the Court shall hold that the prior indorsers are not liable by lapse of six years, then Collins would have no interest in making a payment on the bill, and the Jury must be satisfied that Collins did intend this payment, on the particular draft sued on: which charges the Court refused to give, and Counsel for defendant excepted.

Among other things, the Court charged the Jury—"That if they believed Clarke lived in the City of New York, plaintiff was excused from suing him; that if Peabody was dead, and

there was no administration on his estate, plaintiff was excused as to suing him; that as to the Insurance Bank of Columbus, before the Jury could regard that institution as one of the parties necessary to be sued, they must be satisfied, from the evidence, that Peabody was acting for the bank, and not in his individual capacity; that the simple fact that "Cashier" was added to his name, and the other proof, that he was Cashier of the bank at the time, without further proof that this bill was negotiated by him, for and on account of the bank, was not sufficient proof to make it a bank instead of an individual transaction, on his part; that if the Jury believed that plaintiff commenced suit against the representative of D. McDougald, within three months after notice to sue, plaintiff was entitled to recover; that if they believed the payment on the bill of exchange, testified to by Obear, was placed there in the presence of Collins, and with his knowledge, and he did not dissent from the disposition so made of his money, he was bound by it —his silence being equivalent to his assent".

To all of which charges, Counsel for defendant excepted; and upon these several exceptions, have assigned error.

DeGraffenreid; Cole & Smith, for plaintiff in error.

Poe, Nisbet & Poe, for defendant in error.

*By the Court.*—Benning, J. delivering the opinion.

There are quite a number of questions in this case, but only two were decided. The decision of these two will, probably, put an end to the case, and the other questions are of little general importance.

Of these two questions, the first is—was Mr. DeGraffenreid, the Attorney for Collins, a competent witness to prove the notice to Johnson, to "commence suit".

The Act of 1850, "to regulate the testimony of Attorneys at Law," declares—"that it shall not be lawful for any Attorney at Law or in Equity, in any case", "to give testimony"

"of any matter or thing, either for or against his client, the knowledge of which he may have acquired from his client, or during the existence and by reason of the relationship of client and Attorney". (*Cobb's Dig.* 280.)

This Act, as far as it goes, puts Attorneys at Law below the level of slaves, free negroes and convicted felons, for these may testify among themselves. But an Attorney at Law is not allowed to testify at all, as to anything which comes to his knowledge, as an Attorney at Law. As to any such thing as that, he is a person not to be believed on his oath. An Act so harsh, —so almost penal in its nature, is certainly not to be enlarged by construction. If, therefore, it is doubtful whether a case falls within or without the Act, a proper presumption will pronounce the case to fall without it.

In giving the notice to "commence suit", did Mr. DeGraffenreid act as Attorney at Law, or Attorney in fact? This is a point left in doubt. There is no doubt that he was Attorney at Law in the defence of the suit. But this Act—this giving of the notice to "commence suit", had, at the time when the Act was done, nothing to do with the defence of the suit. And if the notice had been observed, it would never have had any. This Act was a "matter or thing" independent of the suit— was a matter or thing which it did not need an Attorney at Law to do. It was one which any Attorney in fact, might do, and a lawyer may be an Attorney in fact. The Act was of a kind which it is not usual for Attorneys at Law to do—if, indeed, it was not of a kind which falls wholly out of the province of Attorneys at Law. Could the Attorneys at Law, of Mr. Johnson, have acknowledged service of this notice, so as to bind him? And certainly, if the Attorneys at Law for the plaintiff have no authority, as such, to accept a notice, those for the defendant have no authority, as such, to give one.

[1.] This being so, it is to be presumed that Mr. DeGraffenreid, when he gave the notice, acted as Attorney in fact. And if so, then it follows that he did not acquire the knowledge of the act i. e. of the notice which he gave, "by reason of the relationship of client and Attorney".

The Court, therefore, was wrong in holding him to be incompetent to testify of the notice.

[1.] The other question is as to the effect of the addition of the word "cashier" to the name of the payee, in the face of the draft, and to the same name indorsed on the back of the draft. The draft is expressed to be payable "to the order of John Peabody, Esq. Cash." It is indorsed, "John Peabody, Cash". What effect has the word cashier, taken by itself, in this connection?

It is to be presumed that the word was meant to have an effect of some sort. It can have only one of two effects—either to show that a particular person, named Peabody, was meant, viz: that Peabody, who was a cashier, or to show that some bank was meant, viz: that bank whose cashier was named John Peabody. But for the former of these two effects, the addition of the word cashier was not needed. On the contrary, as far as the *indorsement* was concerned, that effect would be better produced by the naked words, "John Peabody" written in the hand of John Peabody. The name and the handwriting would fully identify the writer, while if the word cashier were added, with whatever intent, it would be the means of at least giving rise to a doubt whether the person meant was the private man, John Peabody, or the cashier, as cashier of some bank.

Hence it is, perhaps, that in practice, when men go to bind themselves, personally, they hardly ever add words of any sort to their names. They do not sign themselves A B, Judge, Sheriff, Clerk, Trustee, Executor, Administrator, Guardian, Attorney at Law, President, Cashier, or as the case may be. They sign simply A B.

But if the latter of the two aforesaid effects was the object, then there was a use for the addition of the word cashier; for without that word or something equivalent, there would have been nothing to show that to have been the effect meant.

And not only would there be a use for the word to produce this effect, but the word used in this way would be well adapt-

ed to produce the effect. An indorsement by a bank, in this form—"A B, Cashier," is much more simple and convenient than in this—"The Bank of ————, by A B, its Cashier". More so than in this even—"A B, *as* Cashier".

And therefore it is, probably, that business—real work—almost universally selects this form. All banks draw and indorse in this form. They never, in practice, sign their corporation name to their contracts. They sign the name of their President, or the name of him and that of their Cashier; and when they have done this, they think they have bound *themselves,* and not that their President, or their President and Cashier, have bound themselves.

If, in this case, the word "*as*" had been put in—if the indorsement had been, "John Peabody, *as* Cashier", it is hardly to be supposed that a doubt could be entertained, that the indorsement would have been intended to be that of the bank, and not that of the man Peabody, who happened to be the bank's Cashier. But usage, at this day, does not require the employment of the word *as*, to convey such a meaning, if, indeed, usage ever did. A B, Judge, Justice of the Peace, Sheriff, &c. &c. is a form of expression, which by all, is understood to mean the officer and not the man, as unmistakably as is the expression—A B, *as* Judge, &c. And the latter form is hardly ever used—the former constantly.

Of the two effects, therefore, the latter, viz: that which would make the word cashier designate the bank, and not the bank's cashier, as an individual is, it is to be presumed, the effect *intended.*

And if this was the intention, there is law to carry it into effect. The law is to be found referred to in *Story on Agency,* §154. The other evidence was such as to authorize the Jury to say what particular bank it was that was meant. It showed that Peabody, when he indorsed the draft, was the acting Cashier of the Insurance Bank of Columbus.

The Court, therefore, instead of charging as it did, should have charged, that the fact that the word cashier was added to the name Peabody, in the indorsement; and the other fact,

that Peabody was, at the time of the indorsement, the Cashier of the Insurance Bank of Columbus, were sufficient to require them to presume the indorsement to be that of the bank, and not that of Peabody individually.

To come to any other conclusion, would be fraught with, there is no telling how much of evil. All the bank notes that are issued, are signed "A B, President"; and countersigned, "C D, Cashier". To hold that the import of such signing and counter-signing, is that A B and C D only, and not the bank, are bound, would produce mischiefs that cannot be foretold.

Doubtless evidence would be admissible to rebut this presumption, as to intention.

No question was made, in this case, as to whether a bill of exchange, of this bank, *could* be indorsed by the Cashier, alone, so as to bind the bank—whether the signature of the President was not also necessary, and none such is decided.

There ought to be a new trial.