*John S. Wood* and *Morris & Hawkins,* contra.

---

## MOORE *et al. v.* ADAMS.

1. There is no merit in the motion to dismiss the bill of exceptions.

2. In an action by an alleged vendor for specific performance, where a copy of the alleged written contract for sale of land relied on as foundation for a suit is embodied in the petition, and the paper appears to be signed by persons alleged in the petition to be agents of the vendor, but does not contain the signature of the alleged vendor nor in any way disclose his name, the petition is subject to general demurrer.

No. 2712. JULY 11, 1922.

Specific performance. Before Judge M. D. Jones. Bibb superior court. May 31, 1921.

Elton M. Adams as vendor instituted an action against W. L. Moore, J. P. Peacock, and W. H. Peacock as vendees, for specific performance of a contract for the purchase of land. The second paragraph of the petition, as amended, was as follows:

" On May 6, 1920, your petitioner sold to W. L. Moore and J. P. and W. H. Peacock a certain lot or parcel of land in the city of Macon, Bibb county, Georgia, under a contract more particularly describing said property and setting forth the terms and conditions of said purchase, and which contract was accepted in writing by said W. L. Moore, who represented and acted for himself and associates in the negotiations leading up to said sale and in signing said receipt, being authorized so to do by said Peacocks, is in the form of a receipt given by Willingham Loan & Trust Company, authorized sale agents for petitioner, and signed by them, and is as follows: ' Macon, Georgia, May 6, 1920. Received of J. P. & W. H. Peacock & W. L. Moore, One Thousand Dollars ($1000.00), being part payment for Adams property on Broadway now occupied by Peerless Paint Company, warehouse in rear of same and sheet metal warehouse occupied by Merritt Company. It is understood and agreed that the brick walls on the north and east sides dividing this property from the property occupied by the Ford Tractor people is a party wall. Consideration being $35,000.00; terms as follows: $4,000.00 to be paid October first, 1920, and then on first of each October thereafter for six years $5,000.00 is to be paid. All notes bearing interest from October 1st, 1920, at 7% payable semi-annually. Taxes and insurance to be prorated from October 1st, 1920. Deed subject to examination.

Accepted.                         Willingham Loan & Trust Co.

W. L. Moore.                      By C. B. Willingham Jr., Agts.' "

The defendants demurred separately to the petition. The demurrer of W. L. Moore was upon the grounds: (1) That the petition failed to set forth a cause of action. (2) Paragraph 2 of the petition is insufficient for the following reasons: (*a*) That the instrument relied on as the basis for the action does not appear to be signed by the defendant. (*b*) It is nothing more than a receipt, and has no binding force. (*c*) It does not obligate the said Elton

M. Adams to convey the property therein described, and is therefore unilateral. (*d*) It is not sufficiently definite and certain in its terms and in its description of the land to authorize the court to require specific performance by the defendant. (*e*) It is wholly insufficient in law to authorize a decree for specific performance or damages for the breach of the contract. (*f*) " The alleged sale of said real estate is void because it was not in writing." (*g*) The facts alleged " do not in law make a joint obligation of this defendant with that of the said J. P. Peacock and W. H. Peacock." The demurrers of the other two defendants were identical, and were in substance as set forth above, except that there was an additional ground of demurrer to paragraph 2 of the petition, this ground being that it appears that the instrument relied on by the plaintiff as the basis of the suit "was executed by W. L. Moore, and that it does not appear that the said W. L. Moore had any authority whatsoever to bind this defendant in the making of said alleged contract." The demurrers were each overruled by separate judgments entered thereon. All of the defendants united in one bill of exceptions, assigning error as follows: " To this petition filed by Elton M. Adams, J. P. & W. H. Peacock and W. L. Moore filed a general and special demurrer. After the filing of said demurrer and before the hearing thereof, Elton M. Adams filed an amendment to the petition, which amendment was allowed and ordered filed, at which time J. P. & W. H. Peacock and W. L. Moore renewed their general demurrer to the petition as amended. That said demurrer came regularly on to be heard on the 31st day of May, 1921; that after argument and a consideration thereof the court entered an order overruling the demurrer on each and all of the grounds therein set forth. To this ruling of the court the plaintiffs in error then and there excepted and now excepts and assigns the same as error, on the ground that it was contrary to law."

A motion was made to dismiss the bill of exceptions on the grounds: " 1. That there were filed in this case in Bibb superior court three separate demurrers, demurring generally and specially; one being filed by each of the three defendants. 2. That there was no joint demurrer filed by said defendants, plaintiffs in error before this court. 3. That after argument the demurrer of each of the three said defendants was overruled and three separate

orders taken, one order overruling and being entered on each of said three demurrers. 4. That the bill of exceptions filed by plaintiffs in error in this case, with regard to said three demurrers and the three orders overruling same, is as follows: [the assignment of error in the bill of exceptions as set out above]. 5. That the three demurrers filed individually by the three defendants were not identical; and the grounds of demurrer specified therein were not identical. 6. Defendant in error shows that said bill of particulars is so confused and unintelligible in its terms, that it constitutes no notice to defendant in error or to this honorable court as to which judgment overruling which motion is objected and excepted to."

*J. M. Hancock* and *O. C. Hancock,* for plaintiffs in error.

*Jones, Park & Johnston* and *Walter J. Grace,* contra.

ATKINSON, J. 1. The motion to dismiss the bill of exceptions will be dealt with first. As there was no joint demurrer by the defendants or judgment upon a joint demurrer, but the record specified in the bill of exceptions and brought to this court as such showing that there were separate demurrers by each defendant, and a separate judgment as to each demurrer, the assignment of error in one bill of exceptions by all of the defendants, properly construed, should be held to refer to each of the judgments so rendered upon the separate demurrers. And as the bill of exceptions contains enough to enable this court to ascertain the questions properly raised for decision, the motion to dismiss the bill of exceptions must be overruled. Civil Code (1910), § 6183; *Patterson* v. *Beck,* 133 *Ga.* 701 (66 S. E. 911); *Harris* v. *Lumpkin,* 136 *Ga.* 47 (70 S. E. 869); *Boyett* v. *Bainbridge State Bank,* 136 *Ga.* 689 (72 S. E. 25); *Harris* v. *Brock,* 137 *Ga.* 113 (72 S. E. 947). The ruling in *Burns* v. *Horkan,* 126 *Ga.* 161 (54 S. E. 946), tends to support rather than conflict with what is here held.

2. The action for specific performance was instituted by Elton M. Adams, and the petition was projected on the theory that Elton M. Adams was a party to the contract and seeking to enforce it against the defendants as parties to the contract sought to be charged. Among the grounds of demurrer are, that the petition fails to allege a cause of action; that the paper set out in the petition and relied on as a contract is not binding upon the defendants, because it is not signed by the plaintiff and " does not obli-

gate " him " to convey the property therein described, and is there-
fore unilateral." The paper does not purport to be signed by the
plaintiff, Elton M. Adams, nor does his name appear anywhere in
the paper. It could not be gathered from any construction of the
terms of the paper that Elton M. Adams was the vendor or a party
to the agreement. Contracts for sale of land, being within the
statute of frauds, are required to be in writing, and the writing
should in some way show the names of the parties to the contract.
Civil Code (1910), § 3222; *Oglesby Grocery Co.* v. *Williams Manu-
facturing Co.,* 112 *Ga.* 359 (37 S. E. 372). The decision in the
case just cited was rendered on review of a judgment of the trial
court sustaining a demurrer to a petition based on a contract with-
in the statute of frauds; and it was held: " A memorandum relied
upon to take out of the statute of frauds a contract thereby re-
quired to be in writing must in some way indicate or show who are
the parties to such contract, ' not only who is the promisor, but
who is the promisee as well.' " While the contract involved in that
case differed from that now under consideration, it was of ·the
character which the statute of frauds requires to be in writing;
and hence the principles applied are applicable here. The opinion
rendered by this court, speaking through Mr. Justice Fish, now
Chief Justice Fish, is so apposite that it will be quoted, as follows:

" The Oglesby Grocery Co., a corporation, sued the Williams
Manufacturing Co., another corporation, for $490, as damages al-
leged to have been sustained by the plaintiff, by reason of the
breach by the defendant of an alleged contract for the sale to the
plaintiff of 200 barrels of ' pure Georgia cane syrup,' at 23 cents
per gallon, it being alleged that the barrels of syrup would average
35 gallons apiece. It was alleged that the contract was in writing
and signed by the Williams Manufacturing Co., and that a copy
of the same was attached to the petition as an exhibit. Attached
to the petition, as such exhibit, was the following memorandum:

' Williams Manufacturing Co., Columbus, Ga.

' 200-½ Barl. Ga. Cane, 23.

' Dec. 1, 1899. [Signed] Williams Mnfg. Co.'

" The defendant demurred to the petition, upon the ground that
it appeared therefrom that the alleged contract was within the
statute of frauds, and no ' memorandum in writing sufficient to
bind this defendant was entered into between the parties,' and that

' there was no such part performance or payment of earnest money to bind the bargain as is required by the statute of frauds and by section 2693 (7) of the Civil Code of 1895.' The court sustained this demurrer, and the plaintiff excepted.

"The defect upon which counsel for defendant in error rely is, that the memorandum ' failed to disclose the name of the purchaser, or to designate him ' so ' that he could be identified.' They therefore contend that the memorandum is not sufficient to take the alleged contract out of the statute of frauds. This position is well taken. Granting that this meager memorandum is sufficient in other respects to meet the requirements of the statute of frauds, it fails to set forth a contract, because it does not show or describe who the parties to the contract are. It takes two parties to make a contract; and a writing which names only one party, and does not in any manner indicate who the other party is, does not set forth a contract. It is well established that where the statute requires the contract to be in writing, there can be no binding contract unless both parties thereto are named in the writing, or so described therein as that they may be identified. Clark on Contracts, 118; Browne on St. Fr. §§ 372, 373; Wood on St. Fr. 655, n. 668; Reed on St. Fr. § 401; and the numerous cases cited by these authors to this effect. In Benjamin on Sales, 7th American (Bennett's) ed. § 231, it is declared that ' it is settled to be indispensable that the written memorandum should show not only who is the person to be charged, but also who is the party in whose favor he is charged.' We can well apply to this case the language used by Sir James Mansfield, C. J., in the leading English case decided in 1805, where the memorandum was signed by the vendor, who was the defendant, but the name of the purchaser did not appear therefrom. ' How can that be said to be a contract or memorandum of a contract which does not state who are the contracting parties? By this note it does not appear to whom the goods were sold. It would prove a sale to any other person, as well as to the plaintiff.' Champion *v.* Plummer, 1 Bos. & P. N. R. 252. Counsel for the plaintiff in error admit that this is the general rule which obtains elsewhere, but contend that, ' under our statutes and the construction placed thereon by this court, . . parol testimony was admissible to explain the terms of this agreement and to show the parties thereto, especially so when the con-

tract or memorandum was signed by the party sought to be charged therewith.' After quoting so much of section 2693 of the Civil Code as is applicable to this case, they contend that 'The statute itself does not require that the names of both parties to the agreement shall appear in the contract or memorandum.' It is true that our statute of frauds does not, in express terms, make this requirement. It provides that, ' to make the following obligations binding on the promisor, the promise must be in writing signed by the party to be charged therewith, or some person by him lawfully authorized.' Civil Code [1895], § 2693.

" While the statute does not in express terms require that both parties shall be named or described in the writing, such is its legal effect. It requires the *promise* to be in writing. There can be no promise without both a promisor and a promisee; and the promise is not in writing, unless the writing shows, in some way, who the promisee is. The memorandum relied upon in the present case does not even indicate the existence of a promisee. In a leading American case (Grafton *v.* Cummings, 99 U. S. 100 [25 L. ed. 366]) the Supreme Court of the United States held, ' That in order to satisfy the requirements of the statute of frauds of New Hampshire, the memorandum in writing of an agreement for the sale of lands, which is signed by the party to be charged, must not only contain a sufficient description of them, together with a statement of the price to be paid therefor, but in that memorandum, or some paper signed by that party, the other contracting party must be so designated that he can be identified without proof.' The statute of New Hampshire which the court had under consideration did not expressly require that the names of both parties to the contract should appear in the writing. It provided that ' No action shall be maintained upon a contract for the sale of land, unless the agreement upon which it is brought, or some memorandum thereof, is in writing, signed by the party to be charged, or by some person by him authorized thereto by writing.' Mr. Justice Miller, delivering the opinion of the court, said: ' The statute not only requires that the agreement on which the action is brought, or some memorandum thereof, shall be signed by the party to be charged, but that the agreement or memorandum shall be in writing. In an agreement of sale there can be no contract without both a vendor and a vendee. There can be no purchase without a seller. There must be a sufficient description of the

thing sold and of the price to be paid for it. It is, therefore, an essential element of a contract in writing that it shall contain within itself a description of the thing sold, by which it can be known or identified, of the price to be paid for it, of the party who sells it, and the party who buys it.'

" Counsel for the plaintiff in error rely upon the case of *Mohr* v. *Dillon,* 80 *Ga.* 572 [5 S. E. 770]. In that case it was held that ' An auctioneer's memorandum as follows " Sale in front of store, June 18, 1886, D. R. Dillon (Mohr Bros.) A. Mohr, 100 acres of land, fronting Waters R., at 15 3/4, $1,575," being ambiguous on its face, may be explained by parol evidence; and in this case, evidence showing that the land was bounded in a certain way and fronted on Waters road, that the D. R. Dillon referred to was the owner of the land which was sold for him by the auctioneer, and that the A. Mohr named was the purchaser, was properly admitted.' The decision in that case was based upon the provision of the code that, ' in cases of sales by auctioneers, the auctioneer shall be considered the agent of both parties, so far as to dispense with any further memorandum in writing than his own entries;' and the provisions in reference to the admissibility of parol evidence to explain all ambiguities, both latent and patent. There the auctioneer who conducted the sale was, when he made the memorandum, the agent of both the parties, and when he made the entry upon his book it was as though both parties had signed it. The name of both the seller and the purchaser appeared in the memorandum, but there was an ambiguity as to which one was the seller and which one was the purchaser, and this ambiguity the court held could, under our statutes, be explained by parol proof. There is nothing in the decision rendered in that case which conflicts with the conclusion at which we have arrived in this. Here the memorandum is signed by only one of the parties, and the name of the other party neither appears therein nor is there anything which, in the slightest degree, even tends to indicate who the other party is. To use the expressive language of Chief Justice Bleckley in *Lester* v. *Heidt,* 86 *Ga.* 226 [12 S. E. 214, 10 L. R. A. 108], ' Its deficiency is one of omission, not of imperfect or obscure expression. Its infirmity is not doubtful or ambiguous speech, but utter silence.'

" A case decided by this court which is directly in point is that

of *North* v. *Mendel,* 73 *Ga.* 400 [54 Am. R. 879], in which North & Company sued Mendel & Brother ' for five boxes pork bellies, 124 pieces, 2817 pounds, at 8 cents, $225.36,' alleged to have been shipped by the plaintiffs upon a telegram sent from Savannah to the plaintiffs at Boston, by one Freeman, who the plaintiffs claimed was a broker and the defendants claimed was the agent of the plaintiffs. The telegram was as follows: ' Mendel five bellies eight. . .' In Freeman's entry-book, under the same date as that of the telegram, was the following entry, in his handwriting: ' Sold account C. H. North & Co., Mendel, 5 bellies, 8.' This court held that, even taking the telegram and the memorandum together, ' This was not a sufficient memorandum in writing to comply with the requirements of the statute of frauds, so as to bind Mendel & Brother as purchasers. It fails to set out the purchasers or quantity and price of the article sold, and parol evidence was not admissible to supply these defects.' Hall, J., said in the opinion, ' Mendel,' of itself and unaided by other evidence, could not be taken as the firm name of the defendants, while ' 5 bellies, 8,' is, to the last degree, enigmatical, if not wholly unintelligible.' An examination of the cases of *Houston* v. *Bryan,* 78 *Ga.* 181 [1 S. E. 252, 6 Am. St. R. 252], *DePauw* v. *Kaiser,* 77 *Ga.* 176 [3 S. E. 254], *Wilson* v. *Coleman,* 81 *Ga.* 297, and *Roberts* v. *Mathews,* 77 *Ga.* 460 [6 S. E. 693], which are cited by counsel for the plaintiff in error, will show that there is nothing decided in either of them which at all conflicts with the decision which we render in the present case." See also *Talley* v. *Southern Real Estate &c. Co.,* 152 *Ga.* 277 (109 S. E. 497).

This is ample authority for holding that the paper relied on as basis for specific performance in the present action is not a valid contract on the part of Elton M. Adams, whose name does not appear any where in the paper, and that it should be so held on demurrer. If there is any contract at all, it is in the paper; and it being set out as a part of the petition, the petition shows upon its face the absence of Elton M. Adams as a party to the contract, a defect which is fatal to his right to enforce it. The allegation in the petition that Elton M. Adams was the vendor, and that in making the sale he acted through his sales agent, Willingham Loan and Trust Company, whose signature was affixed to the paper " by C. B. Willingham Jr., Agts.," does not change the result. Such

allegations amount to an attempt to add to the paper matter which the pleaded paper shows it did not contain. The Civil Code (1910), § 3594, has not been overlooked. It is there declared: " The form in which the agent acts is immaterial; if the principal's name is disclosed, and the agent professes to act for him, it will be held to be the act of the principal." This statute allows latitude as to the form in which an agent may contract, but in order to bind his principal the name of the principal must be disclosed, and the agent must profess to act for him. It does not purport to authorize an agent to contract for his principal in a form which would be insufficient if the principal acted for himself. If it is essential that the contracting party's name should appear in the writing when the party is contracting for himself, it is also necessary where he contracts through an agent. Nothing here ruled conflicts with the rulings announced in *Rawlings* v. *Robson,* 70 *Ga.* 595, and *Collins* v. *Johnson,* 16 *Ga.* 458 (2). In *Payton* v. *McPhaul,* 128 *Ga.* 510 (3) (58 S. E. 50, 11 Ann. Cas. 163), and *Tenant* v. *Blacker,* 27 *Ga.* 418, applying the principle of this section of the code, the names of the alleged principals (as shown by the original records of file in this court) did appear in the paper executed by the alleged agent. It was contended that the judgment overruling the demurrers was erroneous for other reasons, among them, because the alleged agent's authority to sell was not alleged to be in writing. No ruling will be made on any of the questions so made, for the reason that, as indicated above, the paper sued upon did not disclose the name of Elton M. Adams, which rendered it fatally defective as his contract. It is therefore unnecessary to decide, and it would be immaterial, whether an agent executed it without authority, or whether it was void for any other reason. *Judgment reversed. All the Justices concur.*