### STORROW v. CONCORD CLUB OF WASHINGTON, D. C.
### No. 6102.

Court of Appeals of the District of Columbia.
Argued March 9, 1934.

Decided April 23, 1934.

Edwin C. Brandenburg and Louis M. Denit, both of Washington, D. C., for appellant.

Aubrey B. Fennell and L. Q. C. Lamar, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

This is an appeal from a decree of the Supreme Court of the District of Columbia dismissing a bill for the specific performance of an alleged contract for the sale of real estate.

Appellant, plaintiff below, a resident of the state of California, in November, 1931, was the owner of certain real estate known as Improved Premises No. 1832 Eye Street, N. W., in the city of Washington. The care and management of this property was intrusted to John W. Calvert, a lawyer and an officer of the National Savings & Trust Company. The defendant is a social and literary club, incorporated under the laws of the District of Columbia. Its business is conducted through a committee on ways and means.

The negotiations were instituted by Mr. Kraft, a real estate broker in Washington, who undertook to effect a sale to the defendant club. Negotiations were conducted by Kraft with plaintiff's agent Calvert, and with the committee and officers of the defendant. It appears to have been agreed upon by the members of the committee on ways and means, who had inspected the premises, that $22,000 would be a fair price for the property. After an exchange of telegrams between plaintiff's agent and his principal, plaintiff agreed to sell the property for that price.

Both Kraft and plaintiff's agent insisted upon a contract being signed by both parties, and a contract was prepared by Kraft, but the defendant's committee refused to sign any agreement whatever, and gave as a reason that due to some litigation then pending between the club and some of its members, or former members, they felt that, if such a contract was made, and it became known, other members of the club might file a suit to enjoin the performance of the contract. When the refusal of defendant's representatives to sign the contract was made known to the plaintiff's agent, Calvert, he wrote Kraft that he reserved the right to withdraw his contract at any time, in which event plaintiff would not be responsible to Kraft for any commission.

Kraft then, on his own responsibility, directed the District Title Company to search the title. The title company prepared a deed of the property from plaintiff to defendant. This deed was sent by Calvert to plaintiff in California, where it was executed and returned. Calvert delivered the deed to the title company, with instructions for the distribution of the proceeds of the sale.

At the instance of defendant's attorney, Mr. Fennell, the directors of the club held a special meeting on February 2, 1932, and passed the following resolution: "Resolved, That the Concord Club of Washington, D. C., buy a tract of land in the District of Columbia, described as lot 809, in square 105, together with the improvements thereon, the same being known and designated at 1832 Eye Street NW., Washington, D. C., for the use of the Concord Club of Washington, D. C., as a clubhouse at and for the price of $22,000, payable in cash at the time of settlement. And be it further resolved, that the president be authorized to have cashiers' checks drawn on the Union Trust Company and the District National Bank in amounts sufficient to pay the purchase price of said property as heretofore stated, and the further amounts due as shown by the settlement sheet of the District Title Insurance Company, dated February 3, 1932, and pay and deliver said checks in full settlement of said purchase."

The checks were issued and held by an officer of the defendant club for delivery, when upon examination of the title it appeared that a prior sales contract had been recorded against the property. Upon the advice of the attorney for defendant company, to the effect that the title was defective, the delivery of the checks was withheld. Later, Calvert secured, on behalf of the plaintiff, a release of this contract, which cleared the record. This release was placed on record

February 17, 1932. It was then arranged between the agents of the parties to pay all the purchase price on February 19th and close up the transaction. Counsel for the defendant club appeared at the title company on that date, made a further examination of the papers, and said that the transaction would be closed as soon as he could verify certain information regarding taxes and insurance. The club later refused to settle, and, when demand was made upon it to perform, it repudiated the entire transaction.

It appears that early in the negotiations a key was furnished to the ways and means committee of the club for the purpose of inspecting the premises, and this key was held by the committee pending these transactions. During this period, the officers of the club spent about $12 in repairing the roof, to prevent damage to the property, and $25 for an architect to plan alterations. Upon these facts, it is urged that there was a contract between the plaintiff and the defendant club which is enforceable, and without the limitations of the statute of frauds.

Plaintiff, in his bill of complaint, alleges that a contract was entered into on December 15th. This averment is based upon what is termed an offer and acceptance, the offer being in the form of a telegram to the plaintiff from Calvert, his agent; and an acceptance of this offer by the plaintiff in a reply telegram. This simply amounted to an exchange of telegrams between the appellant and his agent, and could not constitute a binding contract, as against defendant club. Nor can this be held to have been regarded by Calvert as amounting to a contract between the plaintiff and defendant. Calvert, in a letter to Kraft, dated December 31, 1931, states: "It is understood that as you have not submitted any contract in writing, or put up any money, that until the same is done, that I or Mr. Storrow retain the right to sell the property to any other purchaser without being liable for any commission or other damages."

The issue to be determined in this case is not whether defendant intended to purchase the property or whether the plaintiff and his agents thought that defendant would purchase this property. The question is whether defendant agreed to purchase the property, thereby creating a binding obligation upon its part to purchase the same. The question of what the club might have done had it not found another contract of sale on record, casting, as it believed, a cloud upon the title, in the absence of a binding promise to purchase, is not material.

It clearly appears, we think, that there was an intention on the part of the defendant club to purchase the property in question. Indeed, it was conceded by defendant that the $12 expended in repairing the roof and an expenditure of $25 for the service of an architect to plan alterations were expenditures made in contemplation of purchase. This was followed by the resolution of the directors declaring their intention to purchase, and authorizing the issue of checks for the payment of the purchase price, so that the intention on the part of the defendant to purchase the property may be regarded as conclusively established. It is also true that on February 2d the deed purporting to convey the property to defendant was in the possession of the title company, and that it was examined by defendant's attorney.

The court below, in an able opinion, turned the case upon the fact that there was nothing in the resolution of the board of directors, or in any of the communications or actions taken by the defendant, which indicated any knowledge on their part of the name of the plaintiff, or with whom it was dealing. In the opinion, the learned justice said: "Whatever plaintiff or his agent signed went either to Kraft, the broker, or to the title company which became plaintiff's agent. Nothing signed by plaintiff or his agent ever got into possession of defendant or its agent or attorney. On the other hand no writing signed by any officer or member of the club, and no copy of any of its resolutions ever left the possession of the club. Therefore it seems to me that plaintiff can rely only on documents signed by proper officers of the club, or its agents and writings therein referred to." After reviewing the various documents appearing in the record, the court reached the conclusion that "Not one of these documents mentions the name of the vendor, nor does it describe him in any way."

We think, from a careful examination of this record, that the conclusion of the court below is correct. There is nothing in the various documents issued by, or brought home to, the defendant, which indicates any knowledge on its part of the identity of the vendor. It remains, therefore, that this fact could only be established by parole evidence. It is settled law that a contract for the sale of land, where the memorandum fails to disclose the name of the vendor, cannot be enforced under the statute of frauds. Bowers v. Glucksman, 68 N. J. Law, 148, 52 A. 218; Mentz v. Newwitter, 122 N. Y. 497, 25 N. E. 1044, 11 L. R. A. 97, 19 Am. St. Rep. 514; Moore v. Adams, 153 Ga. 709, 113 S. E. 383,

23 A. L. R. 925; Barkhurst v. Nevins, 106 Neb. 38, 182 N. W. 563; Santis v. Cannata, 42 R. I. 123, 105 A. 561; Irvmor Corp. v. Rodewald, 253 N. Y. 476, 171 N. E. 747, 70 A. L. R. 192.

In Grafton v. Cummings, 99 U. S. 100, 106, 25 L. Ed. 366, the Supreme Court of the United States, considering the sufficiency of a contract within the statute of frauds, said: "The distinct objection to the instrument, as so presented, is that the other party to the contract of sale is not named in it, and can only be supplied by parol testimony. The statute not only requires that the agreement on which the action is brought, or some memorandum thereof, shall be signed by the party to be charged, but that the agreement or memorandum shall be in writing. In an agreement of sale there can be no contract without both a vendor and a vendee. There can be no purchase without a seller. There must be a sufficient description of the thing sold and of the price to be paid for it. It is, therefore, an essential element of a contract in writing that it shall contain within itself a description of the thing sold by which it can be known or identified, of the price to be paid for it, of the party who sells it, and the party who buys it."

The resolution does not create any obligation on the part of the defendant. The language of the resolution and the proceedings preceding it merely express the desire of defendant to acquire the property in question, upon the terms stated therein; but the action taken included no obligation on the part of defendant, and was wholly lacking in the elements of mutuality. It merely directed the purchase upon certain conditions, and until these conditions were fulfilled, so far as any obligation existed under the resolution, the defendant had the right at any time to withdraw from the transaction.

In Carskaddon v. City of South Bend, 141 Ind. 596, 39 N. E. 667, 41 N. E. 1, a much stronger resolution was adopted than the resolution adopted by the defendant in this case. The resolution adopted by the city was as follows: "Resolved, That the mayor of the city be instructed to purchase the property known in the proceedings of this council as the Carskaddon property, for the sum of $20,000.00, said purchase to be made subject to the incumbrance thereon, $4,000.00 to be paid in cash and the balance of $5,000.00 to bear interest at six percent to run for a time agreed upon by said mayor and Carskaddon."

A deed was tendered the mayor, and other steps taken by the vendor to comply with the resolution. The resolution there was much stronger than in this case, in that the name of the vendor was incorporated in the resolution; but the court, holding that this did not constitute a contract, said: "1. The resolution, upon its face, does not create an obligation on the part of the appellee; and, 2d, it cannot be amended by parol. Upon the first of these propositions, it is perfectly plain that the resolution and the proceedings preceding it do no more than express the preference of the common council for the appellant's property, and instruct the mayor to purchase it. It is without doubt that, as a contract, the action taken included no obligation on the part of the appellant, and was wholly devoid of the elements of mutuality."

The provision of the statute of frauds applicable in this District is found in section 2, title 11, D. C. Code 1929, which provides: "No action shall be brought * * * upon any contract or sale of lands, tenements, or hereditaments, or any interest in or concerning them, * * * unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, which need not state the consideration, and signed by the party to be charged therewith or some other person thereunto by him lawfully authorized."

There is no memorandum which passed from the defendant to the plaintiff, or by any person authorized to make such memorandum, that will bring this case within the provisions of the statute. The broker Kraft was not the agent of either party. While there were communications in the form of letters, passed between Kraft and Calvert, the agent of the plaintiff, there was nothing in these that had any binding effect upon the defendant.

It is true that plaintiff deposited a deed through his agent Calvert with the title company, but the title company thereby became the agent of the plaintiff. It is likewise true that Mr. Fennell, the attorney for the defendant, examined this deed and was familiar with its terms, but the only authority vested in Fennell by the board of directors was to be able to assure them of good and sufficient title. Fennell, as attorney, had no authority to bind the defendant in any respect as to the making of any contract. While the officers of the defendant club undoubtedly knew of the existence of the deed, the fact remains that no writing referring to this alleged contract, signed by one of the parties, ever came into the possession of the other party. Consequently, there is nothing either in the ex-

change of telegrams between the plaintiff and his agent Calvert or the delivery of the deed to the title company that will meet the requirements of the statute as forming a contract between these parties.

■ It is urged, however, that there was a part performance, which is sufficient to take the case out of the statute of frauds. A key to the house was delivered by Kraft to the officers of the defendant club for the purpose of inspection of the property. This was done long before it is claimed that any contract was made. It occurred simultaneously with Kraft's calling the attention of the club to this property. It is true that the key was retained by these officers, and that an expense of $12 was incurred by them in repairing the roof of the house; and also that they expended the sum of $25 for the services of an architect to determine whether or not the house could be suitably converted into a clubhouse; but these expenditures were clearly made in contemplation of a subsequent purchase of the property. Indeed, it may be inferred that, when these expenditures were made, it was then the intention of defendant to purchase the property. As we have observed, the mere intention to purchase, without a written contract or memorandum defining that intention in the shape of a contract to purchase, is not sufficient. Besides, it has been held that part performance, as an element of a binding contract, must be performed by the party calling for the enforcement of the contract. "Nothing is part performance for this purpose (specific performance) which is only ancillary or preparatory: it must be a direct act which is intended to be a substantial part performance of an obligation created by the contract as proved; and it must be an act which would not have been done but for the contract; and it must be directly in prejudice of the party doing the act, who must himself be the party calling for the completion of the contract." Williams v. Morris, 95 U. S. 444, 457, 24 L. Ed. 360. Here the expenditures, which it is claimed constituted a part performance, were made by the defendant, and not by the enforcing party, the plaintiff.

It also appears that, in pursuance of a recommendation by the committee on ways and means of defendant club, the board of directors authorized the issuance of a check for $100, payable to the order of Calvert, which check the treasurer of the club sent to Fennell for delivery to Calvert. Presumably this $100 was to be applied as an advance payment upon the purchase price of the property. No formal written contract had been made between the parties. Kraft prepared a contract, which defendant refused to execute. What effect the delivery of this $100 to Calvert would have had upon this case is not important, since, for reasons stated by Fennell, the $100 was never delivered. Consequently, the issuance of a check for that amount, like many other matters appearing in this record, was simply indicative of the intention of the defendant to purchase this property.

The intention of the defendant to purchase was clearly manifested up until the time when Fennell discovered that a contract of sale was on record which it became necessary to have released, and which was subsequently released. Fennell then held up the settlement for some further investigation, and it was at this point that defendant decided to have nothing further to do with the transaction, and all negotiations were closed.

It is probable that defendant club would have purchased the property on February 3d, the date fixed in the resolution by the board of directors, had plaintiff at that time been in position to make satisfactory title; but, when the time arrived, the title company refused to issue a certificate of title, due to the discovery of a former contract of sale on record, which Fennell, attorney for the club, held to be a cloud on the title. When a release of this contract was procured and placed of record, February 19th was fixed as the date for closing the transaction. On that date counsel for the club made an examination of the papers at the office of the title company, and agreed to close the contract as soon as he could make an examination as to taxes and insurance. It was at this point that the club dropped the whole proposition, and at its next regular meeting the purchase of the property was formally abandoned.

We are of opinion, therefore, that the negotiations carried on, as disclosed by the record, do not constitute a sufficient memorandum to establish a contract on which specific performance can be enforced under the statute of frauds.

The decree is affirmed, with costs.