27241. PEEK *et al. v.* MUSE.

DECIDED MARCH 1, 1939.

*J. L. Smith,* for plaintiffs. *Boykin & Boykin,* for defendant.

SUTTON, J. J. M. Peek filed suit as attorney in fact, for the use of himself and other named heirs at law of M. F. Peek, deceased, against O. B. Muse, alleging that he and others named in the petition, for whose use he was suing, were heirs at law of the said M. F. Peek, deceased, and that after the death of M. F. Peek he and the others entered into an agreement by which they appointed him attorney in fact to wind up and settle the said estate and to make distribution thereof, a copy of said written agreement being attached to the petition as exhibit A; that pursuant to such agreement he advertised, in the Carrollton Free Press, the official gazette of Carroll County for 1936, during the month of October, 1936, 100 acres of land, more or less, being the east half of land lot No. 174 in the 10th district of Carroll County, to be sold on the first Tuesday in November, 1936, during the legal hours of sale, a copy of the advertisement being attached to the petition as exhibit B; that at such time and place as named in the advertisement he offered said tract of land to the highest bidder for cash, and that the defendant, O. B. Muse, bid in said property at and for the sum of $3000, the next highest bid being $2995; that the said Muse refused to take the land, and that on January 6, 1937, he gave Muse notice that unless he paid for the land he would resell the same on the first Tuesday in February and hold him responsible for the difference in the price, a copy of such notice being attached to the petition as exhibit C; that the defendant still refused to comply

with his bid, and that during the month of January, 1937, the property was advertised to be sold on the first Tuesday in February, the advertisement appearing for four weeks in the Carroll County Times, the legal gazette of Carroll County, Georgia, for the year 1937, and that said property was sold, on the first Tuesday in February, 1937, to the highest and best bidder for cash for the sum of $2000, a copy of the last advertisement being attached to the petition as exhibit D; that by reason of his failure to comply with his bid and pay for the land the defendant became indebted to the plaintiff, for the use of himself and other named heirs of M. F. Peek, deceased, in the sum of $1000, with interest from the first Tuesday in November, 1936, at 7 per cent. per annum; that the auctioneer, T. M. Hamrick, knocked off said property to the defendant at and for the sum of $3000, and that he made an entry of said sale upon the advertisement in the Carroll Free Press, as follows: "The above-described property sold to O. B. Muse at and for the sum of $3000 cash by J. M. Peek, attorney in fact." A general demurrer to the petition was sustained, and the plaintiffs excepted.

This court is of the opinion that the general demurrer to the petition was properly sustained. My two brethren are of the opinion that the petition was subject to general demurrer because it did not allege that the usees were the owners of the land advertised for sale, that it was covered by the plaintiff's power of attorney, and that he was in position to perform his part of the contract. My personal views are as follows: The decision here involved turns on the question whether the memorandum of the auctioneer was such a sufficient compliance with the statute of frauds as to authorize the present action to be brought for the use of those named in the petition as the alleged owners of the property sold. A sale of land by an auctioneer is within the statute of frauds. *White* v. *Crew*, 16 *Ga.* 416; *Seymour* v. *National B. & L. Asso.*, 116 *Ga.* 285 (42 S. E. 518, 94 Am. St. R. 131). Under the statute of frauds, any contract for the sale of land must be in writing signed by the party to be bound or by some person by him lawfully authorized. Code, § 20-401 (4). It is provided in Code, § 96-114: "In case of sales by auction, the auctioneer shall be considered agent of both parties, so far as to dispense with any further memorandum in writing than his own entries." This section author-

izes an auctioneer to act for both parties in respect to the memorandum of sale, but does not relax the requirement as to what shall be evidenced by the memorandum.

In *Oglesby Grocery Co.* v. *Williams Mfg. Co.*, 112 *Ga.* 359 (37 S. E. 372), it was held: "A memorandum relied upon to take out of the statute of frauds a contract thereby required to be in writing must in some way indicate or show who are the parties to such contract, 'not only who is the promisor, but who is the promisee as well.'" In the opinion it was said: "While the statute does not in express terms require that both parties shall be named or described in the writing, such is its legal effect. It requires the *promise* to be in writing. There can be no promise without both a promisor and a promisee; and the promise is not in writing, unless the writing shows, in some way, who the promisee is. The memorandum relied upon in the present case does not even indicate the existence of a promisee. In a leading American case, (Grafton *v.* Cummings, 99 U. S. 100, 25 L. ed. 366), the Supreme Court of the United States held, 'That in order to satisfy the requirements of the statute of frauds of New Hampshire, the memorandum in writing of an agreement for the sale of lands, which is signed by the party to be charged, must not only contain a sufficient description of them, together with a statement of the price to be paid therefor, but in that memorandum, or some paper signed by that party, the other contracting party must be so designated that he can be identified without proof.' The statute of New Hampshire which the court had under consideration did not expressly require that the names of both parties to the contract should appear in the writing. It provided that 'No action shall be maintained upon a contract for the sale of land, unless the agreement upon which it is brought, or some memorandum thereof, is in writing, signed by the party to be charged, or by some person by him authorized thereto by writing.' Mr. Justice Miller, delivering the opinion of the court, said: 'The statute not only requires that the agreement on which the action is brought, or some memorandum thereof, shall be signed by the party to be charged, but that the agreement or memorandum shall be in writing. In an agreement of sale there can be no contract without both a vendor and a vendee. There can be no purchase without a seller. There must be a sufficient description of the thing sold and

of the price to be paid for it. It is, therefore, an essential element of a contract in writing that it shall contain within itself a description of the thing sold, by which it can be known or identified, of the price to be paid for it, of the party who sells it, and the party who buys it.' " See also *Moore* v. *Adams,* 153 *Ga.* 709 (113 S. E. 383, 23 A. L. R. 925) ; *Rhyne* v. *Mayhugh,* 156 *Ga.* 243 (119 S. E. 522) ; Storrow *v.* Concord Club, 63 App. D. C. 190 (70 F. (2d) 852).

In the present case the memorandum alleged to have been made by the auctioneer was as follows: "The above-described property sold to O. B. Muse at and for the sum of $3000 cash by J. M. Peek, attorney in fact." It is not made to appear that the writing was made in a book of entries, as is usually the practice of auctioneers, but the entry was made on a newspaper carrying the advertisement of sale, reading as follows: "Georgia, Carroll County. By virtue of power of attorney, I will sell before the court-house door of said county on the first Tuesday in November, 1936, during the legal hours of sale, to the highest and best bidder for cash, the following property, to wit: One hundred (100) acres, more or less, being the east half of lot of land No. 174 in the 10th district of Carroll County. This place is known as the late B. F. Rigsby place, about three quarters of a mile east of Shady Grove church and school. This is a well-improved farm, on which are two good dwelling-houses, also good outbuildings. This land is being sold for the purpose of distribution among the heirs at law of M. F. Peek, deceased. For further information see or write J. M. Peek, Carrollton, Ga. This October 7, 1936. J. M. Peek, attorney in fact."

Assuming, but not conceding, that such an entry would answer the purposes of the statute if otherwise sufficient, it is plain, contrary to the contentions of the plaintiff in error, that the memorandum and the information in the advertisement, even if taken together, do not set forth the requisite data which the authorities above cited hold must appear in order for an action on behalf of the alleged owners of the property in question to be maintained. While the description of the property is entirely lacking in the memorandum of the auctioneer, it may be said to be sufficiently definite in the advertisement on which the memorandum was made, if the advertisement could be considered in aid of the memorandum. The name "J. M. Peek, attorney in fact," appears in the memorandum as the seller of the property, but neither in that entry nor

in the advertisement in the copy of the official county gazette can it be ascertained that the property of the alleged owners was being sold. The most that is shown by the advertisement is that the property was to be sold for distribution among the heirs of M. F. Peek, deceased, whether or not they were heirs of a deceased *owner* of the property. The words "attorney in fact" may suggest that J. M. Peek was purporting to act for some undisclosed principal, but in law they are merely descriptio personæ, and do not show in the memorandum of the auctioneer that any property of the heirs named in the petition was being sold to O. B. Muse. It is contended that by parol evidence the deficiencies of the memorandum should be corrected, but there being a complete silence as to the persons named in the petition being the owners or sellers of the property, as distinguished from a mere ambiguity, such evidence can not be resorted to.

In referring to this situation, it was said in *Oglesby Grocery Co.* v. *Williams Mfg. Co.,* supra: "Counsel for the plaintiff in error rely upon the case of *Mohr* v. *Dillon,* 80 *Ga.* 572 [5 S. E. 770]. In that case it was held that 'An auctioneer's memorandum as follows: "Sale in front of store, June 18, 1886, D. R. Dillon (Mohr Bros.) A. Mohr, 100 acres of land, fronting Waters R., at 15 3/4, $1575," being ambiguous on its face, may be explained by parol evidence; and in this case, evidence showing that the land was bounded in a certain way and fronted on Waters road, that the D. R. Dillon referred to was the owner of the land which was sold for him by the auctioneer, and that the A. Mohr named was the purchaser, was properly admitted. The decision in that case was based upon the provision of the Code that, 'in cases of sales by auctioneers, the auctioneer shall be considered the agent of both parties, so far as to dispense with any further memorandum in writing than his own entries;' and the provisions in reference to the admissibility of parol evidence to explain all ambiguities, both latent and patent. There the auctioneer who conducted the sale was, when he made the memorandum, the agent of both the parties, and when he made the entry upon his book it was as though both parties had signed it. The name of both the seller and the purchaser appeared in the memorandum, but there was an ambiguity as to which one was the seller and which one was the purchaser, and this ambiguity the court held could, under

our statutes, be explained by parol proof. There is nothing in the decision rendered in that case which conflicts with the conclusion at which we have arrived in this. Here the memorandum is signed by only one of the parties, and the name of the other party neither appears therein nor is there anything which, in the slightest degree, even tends to indicate who the other party is. To use the expressive language of Chief Justice Bleckley in *Lester* v. *Heidt*, 86 *Ga.* 229 [12 S. E. 214, 10 L. R. A. 108], 'Its deficiency is one of omission, not of imperfect or obscure expression. Its infirmity is not doubtful or ambiguous speech, but utter silence.' "

In like manner we think that there was an utter silence in the auctioneer's memorandum in the present case as to the heirs at law of M. F. Peek being the owners or sellers of the property, either by themselves or through another acting under their authority, and, consequently, parol evidence could not be used to introduce an entirely different seller or owner. If the memorandum shows any seller, such person is J. M. Peek, without any suggestion that he was acting for the heirs at law named in the petition, in which case it can not be said that the heirs at law of M. F. Peek have any right of action against O. B. Muse, either in their own names or by the present plaintiff in their behalf. The petition and exhibits in the present case did not set forth a cause of action, and the trial court properly sustained the general demurrer of the defendant.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur specially.*